UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK MARTINCIC                                    Case No. 18-11670

              Plaintiff,                         Thomas L. Ludington
     v.                                             United States District Judge

COMMISSIONER OF SOCIAL                             Stephanie Dawkins Davis
SECURITY,                                          United States Magistrate Judge

              Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 13, 18)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On May 25, 2018, plaintiff Frank Martincic filed the instant suit.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Thomas L. Ludington referred this matter to the undersigned to review the

Commissioner's unfavorable decision that Martincic's disability ended as of

August 22, 2013.  (Dkt. 3).  This matter is before the Court on cross-motions for

summary judgment.  (Dkts. 13, 18).

    B.    <u>Administrative Proceedings</u>

On June 15, 2010, Martincic filed an application for period of disability and

disability insurance benefits, with an amended onset date of December 31, 2009.

(Tr. 109, 114). [1]  Martincic's claims were initially denied; he requested a hearing and appeared with counsel on May 12, 2011 before Administrative Law Judge Jacqueline Y. Hall-Keith.  (Tr. 30-60).  In a decision dated May 25, 2011, ALJ Hall-Keith found Martincic disabled as of December 31, 2009.  (Tr. 105-114).  On August 22, 2013, the agency determined that Martincic was no longer disabled. (Tr. 15).  This determination was upheld on reconsideration.  *Id.*  Martincic filed a request for hearing and appeared on March 22, 2017 with counsel before ALJ Kari Deming.  (Tr. 61-104).  In a decision dated August 10, 2017, ALJ Deming found that Martincic was no longer disabled as of August 22, 2013.  (Tr. 12-23). Martincic requested a review of this decision and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on May 4, 2018, denied his request for review.  (Tr. 1-7); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that the Court **GRANT** plaintiff's motion for summary judgment, **DENY** defendant's motion for summary judgment, **REVERSE** the findings of the Commissioner, and **REMAND** the case to the Commissioner for further proceedings under Sentence Four.

---

[1] The Administrative Record appears on the docket at entry number 7.  All references to the same are identified as "Tr."

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Martincic was born in 1973 and was 39 years old on the date the ALJ determined his disability ended.  (Tr. 21).  He has worked as a mill right (skilled, heavy) and a machine builder (skilled, medium).  (Tr. 21).  He graduated from high school and has some specialized vocational training, along with two years of college.  (Tr. 36).  Martincic lives with his three children, his parents, and his sister.  (Tr. 69).  He stopped working in 2009 when he was laid off, shortly before an automobile accident, although he attempted to return to work after the accident. (Tr. 39-40).

In view of her determination that Martincic was no longer disabled as of August 22, 2013, the ALJ undertook to "determine if there has been any medical improvement in [the claimant's] impairment(s) and, if so, whether this medical improvement is related to [the claimant's] ability to work."  20 C.F.R. § 416.994(b).  The ALJ ascertains medical improvement by utilizing an eight-step sequential evaluation that largely mirrors the traditional five-step sequential disability evaluation.  20 C.F.R. § 416.994(b)(5)(i)-(viii); 20 C.F.R. § 404.1594(f)(1-8).  At step one, the ALJ determined that Martincic has not engaged in substantial gainful activity since August 22, 2013, the date his disability ended.  (Tr. 17).  At step two, the ALJ determined that since August 22,

3

2013, Martincic did not have an impairment or combination of impairments that met or medically equaled a Listing. (Tr. 17-18). At step three, the ALJ found that medical improvement had occurred as of August 22, 2013. (Tr. 18). The ALJ determined that Martincic did not have any new impairments since August 22, 2013 and thus, his severe impairments were the same as those from "comparison point decision" dated May 25, 2011: lumbar spine injury with radiculopathy, status-post motor vehicle accident. (Tr. 17). Yet, the ALJ also acknowledged that Martincic suffered from non-severe degenerative joint disease of the knees, headaches, diabetes, hypertension, and anxiety. (Tr. 17).

Thereafter, the ALJ assessed Martincic's residual functional capacity ("RFC"), as of August 22, 2013, to perform a range of sedentary work, limited to work permitted him to:

- Sit, stand, and walk up to the exertional limits, with the opportunity to stretch or sit for 1 minute after 15 minutes in any one position;
- Optionally use a handheld assistive device whenever ambulating;
- Occasionally stoop, but never crouch, crawl, kneel or climb stairs/ramps;
- Never be exposed to extremes of temperature or humidity, or to industrial vibration or hazards;
- Never be exposed to flashing light or light of greater brightness/intensity than that found in a typical grocery store;
- Never be exposed to noise environments greater than moderate/ level 3 (business office or grocery store);

- Engage in tasks that do not involve tandem work/ production pacing (e.g., assembly line work);
- Engage in predictable work activity, defined as that with only occasional changes in the work setting or general nature of the tasks performed; and
- Be off-task up to 10% of the workday, in addition to regular break and meal periods.

(Tr. 18). Next, the ALJ concluded that, as of August 22, 2013, Martincic was still unable to perform his past relevant work. (Tr. 21). The ALJ denied Martincic benefits because she found that there are jobs that exist in significant numbers in the national economy that he could perform. (Tr. 21-22).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely

upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals

and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

When, as here, a recipient of disability benefits challenges the cessation of benefits, the central issue is whether the recipient's medical impairments have improved to the point where he is able to perform substantial gainful activity.  42 U.S.C. § 423(f)(1); *Kennedy v. Astrue*, 247 Fed. Appx. 761, 764 (6th Cir. 2007).  Whether an individual is entitled to continued benefits depends on whether "there has been any medical improvement in [the individual's] impairment(s) and, if so, whether this medical improvement is related to [the individual's] ability to work."  20 C.F.R. §§ 404.1594(b), 416.994(b).

The cessation evaluation process is a two-part process.  *See Kennedy,* 247 Fed. Appx. 764-65.  The first part of the process focuses on medical improvement.

*Id.* at 764. The implementing regulations define "medical improvement" as "any decrease in the medical severity of [the individual's] impairment(s) which was present at the time of the most recent favorable medical decision that [the individual was] disabled or continued to be disabled." *Id.* at 764-65 (citing 20 C.F.R. § 404.1594(b)(1)). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the individual's] impairment(s).... 20 C.F.R. §§ 404.1594(b)(1)(i), 416.994(b)(l)(i). If there has been a decrease in the severity of the impairments since the favorable decision, the medical improvement is related to the individual's ability to work only if there has been a corresponding 'increase in [the claimant's] functional capacity to do basic work activities....'" *Kennedy*, 247 Fed. Appx. at 765 (quoting 20 C.F.R. § 404.1594(b)(3)). *See also Nierzwick v. Comm'r of Soc. Sec.*, 7 Fed. Appx. 358, 361 (6th Cir.2001).

The second part of the cessation analysis focuses on whether the individual has the ability to engage in substantial gainful activity. *Kennedy,* 247 Fed. Appx. at 765. The implementing regulations for this part of the evaluation incorporate many of the standards set forth in the regulations that govern initial disability determinations. *Id.* (citing 20 C.F.R. § 404.1594(b)(5) and (f)(7)). The difference is that "the ultimate burden of proof lies with the Commissioner in termination proceedings." *Id.* (citing 20 C.F.R. § 404.1594(b)(5) and (f)(7); *Griego v.*

9

*Sullivan,* 940 F.2d 942, 944 (5th Cir.1991)).  An increase in the claimant's

functional capacity will lead to a cessation of benefits only if, as a result, the

claimant can perform her past work or other work that exists in significant numbers

in the national economy.  20 C.F.R. §§ 404.1594(f)(7), (8), 416.994(f)(7), (8).

In deciding whether a recipient's entitlement to disability benefits has ended,

the Commissioner uses the eight-step sequential evaluation process outlined in 20

C.F.R. §§ 404.1594(f)(l)-(8) and 416.994(f)(l)-(8).  *Kennedy*, 247 Fed. Appx. at

764.  The steps are:

> (1) Are you engaging in substantial gainful activity?  If you are ... we will find disability to have ended....
>
> (2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart?  If you do, your disability will be found to continue.
>
> (3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section?  …
>
> (4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section. ...
>
> (5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply....

(6) If medical improvement is shown to be related to
your ability to do work or if one of the first group of
exceptions to medical improvement applies, we will
determine whether all your current impairments in
combination are severe....

(7) If your impairment(s) is severe, we will assess your
current ability to do substantial gainful activity in
accordance with § 404.1560. That is, we will assess your
residual functional capacity based on all your current
impairments and consider whether you can still do work
you have done in the past. If you can do such work,
disability will be found to have ended.

(8) If you are not able to do work you have done in the
past, we will consider whether you can do other work
given the residual functional capacity assessment....  If
you can, we will find that your disability has ended.  If
you cannot, we will find that your disability continues.

20 C.F.R. §§ 404.1594(f), 416.994(f).

There is no presumption of continuing disability.  *Kennedy*, 247 Fed. Appx.

at 764 (citing *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284,

286–287 n. 1 (6th Cir. 1994)).  Instead, the Commissioner applies the above

procedures to determine whether the claimant's disability has ended and if she is

now able to work.  *Id.*  If the Commissioner's decision is supported by substantial

evidence, the decision must be affirmed even if the court would have decided the

matter differently and even where substantial evidence supports the opposite

conclusion.  *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.

C.      Analysis and Conclusions

1.      Medical improvement

Martincic maintains that he cannot perform the limited range of sedentary set forth in the RFC formulated by the ALJ.  In particular, he disputes that he can perform the "sitting, standing, and reaching" requirements of sedentary work.  In support of his argument, he cites his testimony that he continues to experience disabling leg, back and bilateral foot pain.  He stated that there was a shooting pain in his low back that radiated into his lower extremities and that because of this, he was limited to sitting 30 minutes at a time before needing to transition to standing before in turn sitting for another period of 30 minutes.  (Tr. 76, 81, 84).  He also described being limited to lifting no more than half a gallon of milk.  (Tr. 83).  He explained that he used a cane for ambulation and had one present on the day of the administrative law judge hearing.  *Id*.  He stated that he spent most of his time lying down or reclining in a chair and experienced significant difficulty sleeping at night.  (Tr. 86).

In further support of his argument, Martincic disputes the ALJ's conclusion that the record does not support disability after August 22, 2013.  He points out that he underwent a spinal fusion in March of 2014 (after the date of alleged medical improvement) at which time he had increased complaints of pain and symptomatology postoperatively.  (Tr. 75-76; 581).  During the hearing, Martincic

testified that even the surgeon was unable to explain the reasons for his continued

pain and non-success of the surgical procedure.  The record also reflects that a CT

scan of the lumbar spine performed November 5, 2014 revealed right

nephrolithiasis, sclerotic focus within the left ileum and arthritic changes in the

spine.  (Tr. 533-36).  Throughout the record, the medical records contain

complaints of low back and leg pain accompanied by difficulty walking on

numerous occasions.  According to Martincic, the ALJ improperly relied on

physical examinations that reportedly viewed his status as "unremarkable with

intact strength and gait."  Martincic argues that many of these electronic forms are

pre-filled and not thoroughly completed and recorded by medical physicians and

providers.  Martincic also finds fault with the ALJ's observation that he did not

require additional surgical intervention, asserting that this allegation is not stated

anywhere throughout the medical evidence of record nor did the ALJ cite her

source.  (Tr. 20).

In response, the Commissioner maintains that the ALJ's determination that

Martincic could perform a limited range of sedentary work as of August 22, 2013

is supported by substantial evidence.  The Commissioner first points out that

Martincic does not challenge the ALJ's reliance on the December 2013 opinion of

state agency reviewing physician Dr. Khalid, indicating that he had the RFC to

perform sedentary work, although the ALJ found Martincic to be more restricted.

(Tr. 19, referring to Tr. 524-31). Moreover, although the ALJ did not mention it, the July 2013 opinion of state agency reviewing physician Dr. Daniels (Tr. 449-56) is consistent with that of Dr. Khalid. The ALJ also relied on significant further evidence relevant to the RFC determination such as Martincic's March 2013 report that his symptoms had improved by thirty percent. (Tr. 18, supported at Tr. 444). The ALJ additionally relied on repeated findings of normal strength and ambulation from 2012 onwards. (Tr. 18, 19, 20, supported at Tr. 433, 439, 506, 549, 554, 560, 565, 569, 573, 577, 583, 587, 594, 610, 614, 618, 623, 632, 640, 644, 648, 651-52, 656, 660, 664, 667), while recognizing that ambulation was temporarily impaired in June and July 2015 (Tr. 20, supported at Tr. 539, 542). The ALJ also relied on a January 2015 neurological study finding no evidence of lower extremity radiculopathy. (Tr. 20, supported at Tr. 598).

At the heart of the parties' arguments is whether the ALJ's analysis of medical improvement leading to the conclusion that Martincic's RFC renders him able to work, is legally correct and supported by substantial evidence. Unlike initial disability determinations, "the ultimate burden of proof lies with the Commissioner in termination proceedings." *Kennedy v. Astrue*, 247 Fed. Appx. 761, 765, 768 (6th Cir. 2007) (citing 20 C.F.R. § 404.1594(b)(5), (f)(7); *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991)) (reversing and remanding because the Commissioner did not satisfy her burden of establishing medical improvement).

14

Indeed, the Commissioner bears the burden of proving both that "the severity of a claimant's impairment has medically improved, and that the claimant is now able to perform substantial gainful activity." *Delacotera v. Colvin*, 2017 WL 169104 (E.D. Tenn. Jan. 1, 2017) (quoting *Little v. Comm'r of Soc. Sec.*, 2014 WL 656737, at *4 (S.D. Ohio Feb. 19, 2014) (citing 42 U.S.C. § 423(f)(1); *Kennedy*, 247 Fed. Appx. at 764-65). While not raised by Martincic, the ALJ applied the wrong burden of proof in this case:

> Although the claimant generally continues to have the burden of proving disability at this step [step eight], <u>a limited burden of going forward with the evidence shifts to the Social Security Administration</u>. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrate that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience.

(Tr. 16-17) (emphasis added). In *Delacotera*, the court found identical language meant that the ALJ placed the burden of proof <u>on the claimant</u> at steps one through seven, contrary to the Commissioner's burden of proving medical improvement and the ability to perform substantial gainful activity as a result. The court found that this was clear legal error. *Id*. at *3. *See also McLean v. Colvin*, 2015 WL 5730451, at *3 (W.D. Okla. Sept. 15, 2015), report and recommendation adopted, 2015 WL 5769994 (W.D. Okla. Sept. 30, 2015). A review of the ALJ's decision does not suggest that the ALJ's error was harmless or merely a scrivener's error.

That is, nothing in the decision suggests that the ALJ merely misstated the burden of proof, but properly applied it to the Commissioner, instead of Martincic. Thus, a remand is required for this reason alone.

The undersigned is also troubled because the record does not contain the medical evidence or medical opinions underpinning the earlier decision. To determine whether the claimant's impairments have "improved," the ALJ uses the comparison point decision (CPD) date, which is defined as "the most recent favorable medical decision that you were disabled or continued to be disabled," as a reference point. *Jackson v. Comm'r of Soc. Sec.*, 2018 WL 5316028, *3 (E.D. Tenn. Oct. 9, 2018), report and recommendation adopted, 2018 WL 5315197 (E.D. Tenn. Oct. 26, 2018) (quoting 20 C.F.R. § 404.1594(b)(7)). If, at the time of the disability review, a claimant's impairments are less severe than they were at the comparison point decision date, then a medical improvement has occurred, and the ALJ must proceed to step four and determine whether the improvement is related to the claimant's ability to work. *Jackson*, at *3 (citing 20 C.F.R. § 404.1594(f)(4)). This requires the ALJ to assess the claimant's current RFC and compare it to his RFC at the time of the comparison point decision date. *Jackson*, at *3. It is impossible for the Court to assess whether the ALJ's analysis is supported by substantial evidence when the medical records and opinions pertaining to the period of disability are not contained in the record. For example,

16

the ALJ pointed to "unremarkable" physical examinations with intact strength and gait after surgery, but we cannot compare those physical examinations with the pre-2011 decision records to see how and if they differ or show signs of improvement because those records are not in this record.  Similarly, it is not clear on this record that the reviewing physicians (on which the ALJ relied, at least as to Dr. Khalid) were given such records.  Dr. Khalid's summary of the medical records reviewed contained no reference to records pre-dating the 2011 decision and refers to the "CDR" (continuing disability review) summary dated April 22, 2013.  (Tr. 531, citing Tr. 117).  Dr. Daniels' review, dated July 29, 2013, also contains no reference to medical records pre-dating the 2011 decision.  (Tr. 450-451, 456).  This suggests that neither physician had access to those records.  The Sixth Circuit has held that the ALJ's failure to provide consultative examiners with all relevant medical records violates 20 C.F.R. § 1517 and that, even if there is substantial evidence suggesting that a different outcome on remand is unlikely, the failure to enforce such a regulation is reversible error.  *Brantley v. Comm'r of Soc. Sec.*, 637 Fed. Appx. 888, 896 (6th Cir. 2016) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004) ("To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with [the regulation at issue], would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory.").  *Brantley* and the regulation

17

on which it relied does not squarely apply because Drs. Daniels and Khalid were reviewing physicians, not consultative examiners, but it is not without significance that the ALJ may not have provided such records to the reviewing physicians, given the ALJ's reliance on at least the evaluation of Dr. Khalid. And, it is also significant that neither reviewing physician had the benefit of the records relating to Martincic's subsequent back surgery and post-operative pain issues.

Further, it does not appear that the ALJ undertook the required comparison of Martincic's condition when he was found to be disabled and when she concluded that he was no longer disabled. The first ALJ found Martincic disabled as of March 31, 2009. The ALJ found that Martincic's testimony that he is unable to walk a block, stand or sit for more than 20 minutes, lift more than two pounds, that his severe back pain radiates into his legs and necessitates frequent recumbency, that he requires a shower chair to shower, a cane to ambulate and assistance getting dressed (Tr. 111-112), was supported by the medical evidence and opinion evidence:

> Turning to the medical evidence, the record reveals the claimant sustained serious lumbar spine injuries during the aforementioned automobile accident. A November 2009 MRI revealed herniations at L2-3(with annular tearing) and 15-S 1 (with effacement of the anterior thecal sac and foraminal narrowing (Exhibit lF). A December 2009 EMG revealed bilateral 15-Sl paraspinal muscle denervation consistent with local spinal disease (Exhibit 1 F). The record further reveals the claimant has undergone a series of lumbar epidural injections,

> participated in several courses of physical and aquatic
> therapy and has been referred for lumbar fusion surgery
> with caging (claimant is currently awaiting for
> authorization from his no-fault insurer).
>
> Notably, the claimant's treating physician, Dr. Pispidikis
> submitted an opinion regarding the nature and severity of
> the claimant's impairments (Exhibit 15F). Dr. Pispidikis
> opined that the claimant could: sit for only two hours
> total out of an eight-hour workday; stand or walk for only
> half an hour out of an eight-hour workday; lift no more
> than five pounds; and never bend, twist, squat, kneel,
> climb stairs or ladders, crawl and/or stoop (Exhibit 15F).
> Dr. Pispidikis further noted the spine surgeon had
> evaluated the claimant and that he was a surgical
> candidate Exhibit 15F). Importantly, Dr. Pispidikis'
> opinion is supported by clinical and laboratory findings
> including x-rays, EMG results, MRI results, clinical
> examinations and functional studies (Exhibit 15F).

(Tr. 112).

ALJ Deming determined that medical improvement occurred on August 22,

2013 for the following reasons:

> Diagnostic imaging performed in November 2012
> revealed only mild degenerative changes.  Treatment
> reports noted non-diagnostic low back pain. Physical
> examinations were mostly unremarkable with 5/5
> strength. The claimant also reported thirty-percent
> improvement in his symptoms (Exhibit B4F).

(Tr. 25).  The November 2012 imaging results and Martincic's reports of pain

improvement after receiving back injections seem a rocky foundation upon which

to build a theory of improvement in the face of his subsequent need for back

surgery.  If this evidence supports a finding of medical improvement such that

Martincic could work, it does not follow that his condition would require surgery about 17 months later.  Moreover, the ALJ does not explain why "non-diagnostic" low back pain is suggestive of improvement.  Rather, the term "non-diagnostic" merely suggests that no particular imaging test explained the reason for his back pain, not that it was non-existent.  *See e.g.*, *Mondragon v. Astrue*, 2009 WL 10690952, at *6 (D. Or. Mar. 17, 2009), aff'd, 364 Fed. Appx. 346 (9th Cir. 2010) ("Dr. Moser also assessed low back pain and left leg pain, however, she found that the exam was fairly non-specific and the nerve conduction studies (although incomplete) were non-diagnostic.").  And, the "non-diagnostic" nature of Martincic's back pain was noted <u>before</u> his back surgery, suggesting that this description is not significant.  (Tr. 433, 506).  Importantly, because the record does not contain the pre-2011 decision imaging studies, there is no basis for comparison.

The ALJ also concluded that other medical evidence supported the decision that Martincic's benefits were properly terminated on August 22, 2013:

> The claimant's benefits were ceased effective August 22, 2013, due to improvement in his low back pain related to the remote automobile accident. He continued treatment for low back pain.  However, he denied joint stiffness (Exhibit B8F). On November 20, 2013, it was noted that the claimant experienced non-diagnostic low back pain: "not clear if is of facetogenic mechanical origin and/or myofascial origin" (Exhibit B9F, p.3 ). He was primarily concerned about his ability to undergo heavy labor (Exhibit B9F, p.5). Motor function was 5/5 in all

> myotomes and ambulation was symmetric and smooth
> (Exhibit B9F, p.3). X-rays of the lumbar spine taken in
> November 2013 revealed normal findings (Exhibit B8F,
> p.18). A treatment report dated November 20, 2013 noted
> full range of motion in the neck and no edema in the
> extremities.  He received physical therapy for low back
> pain twice weekly for four weeks (Exhibit B7F).

(Tr. 19).  The ALJ acknowledged that Martincic underwent a spinal fusion in

March 2014 with increased complaints of pain postoperatively.  His surgeon was

unable to explain his pain symptoms.  A November 5, 2014 CT of the lumbar spine

revealed incidental right nephrolithiasis, sclerotic focus with the left ileum and

arthritic change in the spine.  An MRI on November 5, 2015 revealed surgical

manifest decompression L5-S1 with fusion posterior transpedicular approach.  (Tr.

19-20).  Treatment notes from 2015 noted continued low back and leg pain and

impaired walking.  Martincic continued to treat for back pain with numbness and

tingling in his legs.  Other reports indicated that he was able to ambulate normally

throughout 2015 and 2016 and had normal strength.  The ALJ also pointed out that

there was no electrodiagnostic evidence of radiculopathy in his legs.  (Tr. 19).

Additionally, the ALJ observed that while Martincic complained of ongoing back

pain after his lumbar surgery in March 2014, his physical examinations were

unremarkable with intact strength and gait.  Accordingly, the ALJ found that he

could perform a limited range of sedentary work.  *Id.*

21

Again, the problem with the ALJ's analysis and the Court's ability to review that analysis is the lack of medical records pre-dating the 2011 decision.  As explained in *Campbell v. Comm'r of Soc. Sec.*, 2011 WL 2160460 (E.D. Mich. June 1, 2011), it was reversible error where the ALJ did not compare the findings in the report relied on to find the claimant no longer disabled with the evidence from when the claimant was found disabled.  Had the ALJ done so in *Campbell*, she would have noted that many of findings relied on for the finding of non-disability were the same as those when the claimant was found disabled.  *Id*. at *5. Accordingly, the ALJ did not undertake the required comparison set forth in *Kennedy*.  *Id*. at *4-5.  Here, the problem is even worse because the records needed for comparison are not contained in the transcript.  The present circumstances are also similar to those in *Jackson*, where the court found the ALJ's analysis on termination of benefits inadequate.  In *Jackson*, the ALJ noted that the plaintiff had normal strength, gait, and full strength on several occasions.  *Id*. at *6.  The court observed that  normal gait, full strength, and intact range of motion in the plaintiff's hips certainly could indicate a medical improvement in her hip impairment from the CPD, but it was impossible to tell from the record.  More specifically, neither the Commissioner nor the ALJ cited "any proof concerning Plaintiff's gait or hip range of motion at any time closer to the alleged onset date or the CPD that could be compared to the normal findings in 2014 and 2016."  *Id*.

Similarly, while the ALJ and the Commissioner here point to "normal" findings, the Court is unable to discern how those findings compare to related findings pre-dating the 2011 decision.

As discussed in detail above, there is little evidentiary basis to support the ALJ's conclusion that Martincic's condition had improved such that he was no longer disabled.  Again, this is critical because unlike cases in which there has been no prior finding of disability, here it is the Commissioner who bears the burden of establishing medical improvement and the ability to work, not Martincic. Further, the ALJ's opinion does not analyze the *degree* to which Martincic improved at all; there is simply no analysis as to the suggestion that Martincic's improvement from the baseline indicates an ability to work.  For example, even if Martincic's pain improved 30% after receiving back injections, the ALJ does not explain how a 30% improvement in pain (even assuming this is more than a short-term improvement) relates to the ability to work.  To be clear, in reviewing the evidence the ALJ relied on to find medical improvement, the Court does not re-weigh the evidence, but rather assesses whether the Commissioner met her ***burden*** of showing medical improvement supported by substantial evidence of record. *Ryan v. Comm'r of Soc. Sec.*, 2018 WL 1096464, *9 (E.D. Mich. Feb. 8, 2018) (Patti, M.J.), report and recommendation adopted, 2018 WL 1089600 (E.D. Mich. Feb. 26, 2018) (Murphy, J.).  In this vein, even if the records cited by the ALJ were

deemed sufficient to substantiate a medical improvement "based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [plaintiff's] impairment(s)," *Kennedy*, 247 Fed. Appx. at 765 (quoting 20 C.F.R. § 404.1594(b)(1)), such a medical improvement is related to an individual's ability to work only "if there has been a decrease in the severity ... of the impairment(s) present at the time of the most recent favorable medical decision ***and*** an increase in your functional capacity to do basic work activities ..." *Id*. (quoting 20 C.F.R. § 404.1594(b)(3) (emphasis added)).  As explained in *Kennedy*, a decision in which the Court of Appeals determined that the ALJ's medical improvement analysis was not supported by substantial evidence:

> … no effort was made by the ALJ nor any medical source to ***compare*** her abilities or her limitations to those possessed at the time of the initial determination. Medical improvement is any decrease in the medical severity of the claimant's impairment which was present at the time of the prior favorable decision. Medical improvement "is determined by a comparison of prior and current medical evidence ..." 20 CFR § 404.1594(c)(1). As noted above, Kennedy appears to have had essentially the same functional abilities 1995 as these noted by the ALJ in support of his finding of medical improvement. The conclusions of the Commissioner and the ALJ that these functional abilities indicate medical improvement is not supported by substantial evidence and is in fact contrary to the evidence in the record.

*Kennedy*, 247 Fed. Appx at 765 (emphasis in original).  Fundamentally, what is missing from the ALJ's decision on medical improvement is any discussion of a

*comparison* of Martincic's abilities and limitations as of August 22, 2016 and before that date based on the medical evidence purporting to show medical improvement.  *See Kennedy*, *supra*.  That is, the ALJ does not make a logical or evidential connection between the symptoms, signs and/or laboratory findings showing medical improvement and an increase in Martincic's functional capacity to perform work.  Thus, the ALJ's medical improvement analysis is not supported by substantial evidence.

Given the foregoing conclusions and recommendation for remand, the undersigned need not address the additional points of error raised by Martincic.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Court **GRANT** plaintiff's motion for summary judgment, **DENY** defendant's motion for summary judgment, **REVERSE** the findings of the Commissioner, and **REMAND** the case to the Commissioner for further proceedings under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 9, 2019

s/Stephanie Dawkins Davis
Stephanie Dawkins Davis
United States Magistrate Judge

26

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 9, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Tammy Hallwood, Case Manager
(810) 341-7850
<u>tammy_hallwood@mied.uscourts.gov</u>